**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

ROBERT GARCIA,                    §
                                  §
            Plaintiff,            §
                                  §
v.                                §          CIVIL ACTION NO. H-18-4558
                                  §
COMMUNITIES IN SCHOOLS OF         §
BRAZORIA COUNTY, INC., ET AL.,    §
                                  §
            Defendants.           §

**MEMORANDUM AND OPINION**

Robert C. Garcia sued the Communities in Schools of Brazoria County, Inc., the Communities in Schools of Southeast Harris County, Inc., and seven individuals, alleging federal-law claims for age discrimination, and seeking damages and equitable relief for state-law claims for fraudulent misrepresentation, intentional infliction of emotional distress, breach of fiduciary duty, ultra vires acts in violation of corporate bylaws, civil conspiracy, conversion, and defamation. (Docket Entry No. 1 at ¶¶ 2–3). Garcia amended his complaint, the defendants moved to dismiss, and Garcia did not respond to the motion. (Docket Entry Nos. 32, 33). After a careful review of the amended complaint, the motion, and the applicable law, the court grants the motion to dismiss in part and denies it in part. (Docket Entry No. 33). Garcia must file an amended complaint, amending those allegations that were dismissed without prejudice, no later than **June 21, 2019.**

The reasons for this ruling are detailed below.

**I.     Background**

The court takes the well-pleaded factual allegations as true for the purposes of this motion. In 1996, Garcia helped found the nonprofit Communities in Schools of Brazoria County, Inc.,

which partnered with the Communities in Schools of Southeast Harris County to form the Communities in Schools Joint Venture. Garcia became, at age 50, the new organization's executive director. (Docket Entry No. 32 at ¶¶ 17, 18). Donna Montes, Cheryl Sellers, and Elizabeth Evans worked under Garcia at the Joint Venture. Sellers was the Director of Community Relations, and Evans was the Chief Financial Officer. (*Id.* at ¶ 19).

In 2013, Garcia reached an agreement with the Communities in Schools Joint Venture Board relating to his eventual departure. (*Id.* at ¶ 20). Carol Bertholf, Roland Hendricks, and John Vasut were members of the Communities in Schools of Brazoria County Board; Bertholf served as that Board's chairperson; and Kelly Shea was the chairperson of the Communities in Schools Southeast Harris County Board. (*Id.* at ¶ 19). The agreement required the Joint Venture to pay Garcia for unused vacation time based on records that Garcia would submit from 2013 to September 2017. (*Id.* at ¶ 20).

At a January 2017 Board meeting for the Communities in Schools Brazoria County, and at a February 2017 Board meeting for the Communities in Schools Southeast Harris County, Garcia announced that he would retire in June 2018. (*Id.* at ¶ 21). Garcia alleges that on February 24, 2018, he gave Bertholf a draft proposal of his retirement plan "to get her personal advice on [his] transition." (*Id.* at ¶ 22). Garcia met with his executive staff on March 7, 2018, to discuss a revised draft that he wanted to present to the Joint Venture Board later that month. The staff agreed that Garcia should become a member of the Joint Venture board after he retired or remain as the Joint Venture's executive director. (*Id.* at ¶ 23).

Garcia alleges that on March 6, 2018, before the scheduled Communities in Schools Southeast Harris County Board meeting, the chairperson, Shea, "held a secretive Board meeting," without informing Garcia. At that meeting, Shea allegedly falsely represented that Garcia "had

submitted his resignation and agreed to terms for severance." (*Id.* at ¶ 24). Montes, Evans, and Sellers were at the meeting. (*Id.* at ¶ 25). The Communities in Schools Southeast Harris County Board voted to terminate Garcia's employment, and Shea cancelled the Board meeting that Garcia was scheduled to attend later that month. (*Id.* at ¶¶ 25, 28).

Garcia alleges that he never discussed his retirement proposal with, submitted his resignation to, or agreed to a severance package from, the Southeast Harris County Board. (*Id.* at ¶ 24). Garcia alleges that after the March 6 meeting, Montes, Evans, and Sellers did not tell him, their supervisor, about the discussions of his retirement. Instead, they allegedly began undermining Garcia at work by ignoring his emails, not copying him on emails, failing to notify him of meetings, taking unscheduled vacations, and leaving work unfinished. (*Id.* at ¶ 25). According to Garcia, the individual defendants began to "establish a false narrative . . . that [he] had committed financial fraud, created a toxic environment, racism, and mismanaged the organization." (*Id.* at ¶ 26). These defendants allegedly falsely represented to other Board members that Garcia "had submitted his Draft Proposal to both boards and was seeking to retire in May 2018." (*Id.* at ¶ 27). As noted, Garcia alleges that he gave the May 2018 draft to Bertholf to obtain her advice, but he did not submit it to either Board or to Shea for official action. (*Id.*).

On March 21, Garcia told Bertholf that he would not retire until June 2018 and would instead remain as the executive director until the Communities in Schools Joint Venture started its next program year in September 2018. (*Id.* at ¶ 28). He emailed this information to the members of both Boards that same day. (*Id.*).

The next day, Garcia attended a Joint Venture Board meeting. Bertholf, "without warning, due process," or good cause, announced that Garcia was resigning. (*Id.* at ¶ 29). Shea then gave Garcia an Age Discrimination in Employment Act and the Older Workers Benefit Protection Act

release agreement and asked him to sign it during the meeting. Garcia was not given prior notice or an opportunity to seek an attorney's advice. (*Id.*). Garcia alleges that he "made a good-faith complaint to the Board members regarding his rights under the Age Discrimination in Employment Act, but he was "instantly retaliated against" by being terminated for not signing the release agreement. (*Id.*). Over Garcia's complaints about the release agreement's impact on his rights under the Age Discrimination in Employment Act and other statutes, the defendants "continued to attempt to coerce [Garcia] to sign immediately by waving a check in front of him." (*Id.* at ¶ 31). Vasut allegedly "use[d] his position as a Judge to intimidate" Garcia, including stating that if he failed to resign and sign the release agreement, he would face a restraining order preventing him from returning to his office, talking to staff, or going to the school campuses that the Joint Venture served. (*Id.* at ¶¶ 30, 32). Garcia did not sign the agreement. (*Id.* at ¶ 32).

Garcia asked that he be allowed to stay on as executive director until May 1, 2018, with no severance. The Board denied that request. (*Id.* at ¶ 33). Vasut "ordered Officer Castellow to escort" Garcia off the premises. (*Id.* at ¶¶ 33–34). Garcia was not allowed to collect his personal belongings. (*Id.* at ¶ 34). Bertholf and Shea later allowed Montes, Evans, and Sellers to enter Garcia's office and pack those belongings, but did not make them available to Garcia for almost 8 months. (*Id.* at ¶¶ 34, 37, 54).

Bertholf, Shea, and Hendricks informed the Communities in Schools Joint Venture executive staff that Garcia had resigned and allegedly told the staff "that they would be fired if they discussed [Joint Venture] business with [Garcia]." (*Id.* at ¶ 38). Garcia alleges that these defendants made false accusations at the meeting about his health and his actions as executive director, suggesting financial improprieties. (*Id.*). Montes emailed all Joint Venture employees an announcement that Garcia had resigned. (*Id.*). Montes called a meeting of all Communities in

4

Schools staff on March 28, 2018, to allegedly "falsely represent[] . . . that [Garcia] had resigned, allude[] to all employees to call 911 if [Garcia] should visit their campus, and not to talk to [Garcia] about [Communities in Schools] matters or they would be fired." (*Id.* at ¶ 39). At a later meeting of both boards, an independent auditor stated that Garcia had not committed any financial wrongdoing. (*Id.* at ¶ 46).

Garcia tried to appeal the decision in April 2018 by emailing the Communities in Schools Joint Venture Board for a hearing, in accordance with the Joint Venture Employee Manual. Bertholf denied that request and a second request Garcia sent in November 2018. (*Id.* at ¶ 43). The Joint Venture's attorney told Garcia that the organization would ship his personal belongings to him, but Garcia alleges that the "Board of Directors [was] using [his] personal property as a hostage to coerce him into signing a release and waiver of his claims and never intended to return his property until this action took place." (*Id.* at ¶ 45). Garcia then received a second release agreement and a request for an immediate response. (*Id.* ¶ 48). Garcia refused to sign that agreement as well. (*Id.*). According to Garcia, the harassment and pressure continued. He alleges that Evans hired a private investigator, worked with Montes and Sellers to move Garcia's personal property out of his former office, and falsely told the Texas Workforce Commission that Garcia had resigned. (*Id.* at ¶¶ 49–51).

Garcia filed a complaint with the Equal Employment Opportunity Commission in September 2018, and Garcia requested and received a right to sue letter. (*Id.* at ¶ 52). This lawsuit followed.

According to Garcia, the March 22 meeting violated the Joint Venture bylaws, both on timely notice to Board members and on quorum requirements. (*Id.* at ¶ 36). Garcia alleges that the meeting was planned to avoid the expiration of several defendants' Board memberships in May

2018.  (*Id.*).  Garcia alleges that the defendants terminated, harassed, and discriminated and retaliated against him, because he was 71 years old.  (Docket Entry No. 32 at ¶ 2).  He also asserts fraudulent misrepresentation, promissory estoppel, intentional infliction of emotional distress, breach of fiduciary duty, violation of corporate bylaws, ultra vires acts, civil conspiracy, conversion, and defamation against the Board of Directors.  (*Id.* at ¶ 3).  Garcia seeks equitable relief, damages, and fees.  (*Id.* at ¶ 2).

## II.    The Standard for a Rule 12(b)(6) Dismissal

Rule 12(b)(6) allows dismissal if a plaintiff fails "to state a claim upon which relief can be granted."  FED. R. CIV. P. 12(b)(6).  Rule 12(b)(6) must be read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief."  FED. R. CIV. P. 8(a)(2).  A complaint must contain "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.* (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Id.* (citing *Twombly*, 550 U.S. at 556).

To withstand a Rule 12(b)(6) motion, a "complaint must allege 'more than labels and conclusions,'" and "a formulaic recitation of the elements of a cause of action will not do."  *Norris v. Hearst Tr.*, 500 F.3d 454, 464 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"

*Iqbal*, 556 U.S. at 678 (alteration in original) (quoting *Twombly*, 550 U.S. at 557). "[A] complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555). "Conversely, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief, this basic deficiency should be exposed at the point of minimum expenditure of time and money by the parties and the court." *Id.* (quotation marks and alteration omitted).

In considering a motion to dismiss under Rule 12(b)(6), "a district court must limit itself to the contents of the pleadings, including attachments." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000). Documents "attache[d] to a motion to dismiss are considered part of the pleadings, if they are referred to in the plaintiff's complaint and are central to [the] claim." *Id.* at 498–99 (quoting *Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993)). The court may also "take judicial notice of matters of public record." *Norris*, 500 F.3d at 461 n.9.

The court should generally give a plaintiff at least one chance to amend under Rule 15(a) before dismissing the action with prejudice, unless to do so would be futile. *See Carroll v. Fort James Corp.*, 470 F.3d 1171, 1175 (5th Cir. 2006) ("[Rule 15(a)] evinces a bias in favor of granting leave to amend." (quotation omitted)); *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002) ("[D]istrict courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal."). A court may deny a motion to amend for futility if an amended

complaint would fail to state a claim upon which relief could be granted. *Pervasive Software Inc. v. Lexware GmbH & Co. KG*, 688 F.3d 214, 232 (5th Cir. 2012). The district court has discretion to grant or deny leave to amend. *Id.*

## III.    Analysis

### A.      The Age Discrimination Claims

The defendants argue that Garcia has not alleged facts that could show the defendants discriminated or retaliated against him because of his age. (Docket Entry No. 33 at 17, 21). The defendants also argue that Garcia's allegation that the defendants violated the Older Workers Benefit Protection Act's waiver provisions cannot be a basis for an independent Age Discrimination in Employment Act claim. (*Id.* at 15–17).

#### 1.     The Age Discrimination in Employment Act Claim

The ADEA makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1); *see Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 141 (2000). An employee who is at least 40 years old cannot be subjected to an adverse employment action because of the employee's age. 29 U.S.C. § 631(a); *see Rutland v. Moore*, 54 F.3d 226, 228 (5th Cir. 1995) (citing 29 U.S.C. §§ 623(a), 631(a)). The *prima facie* elements of an ADEA claim are that the plaintiff: (1) is within the protected class; (2) is qualified for the position; (3) suffered an adverse employment decision; and (4) was replaced by someone younger or treated less favorably than similarly situated younger employees. *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013) (citing *Smith v. City of Jackson*, 351 F.3d 183, 196 (5th Cir. 2003)). The Supreme Court has held that to survive a Rule 12(b)(6) motion to dismiss, "an employment discrimination plaintiff need

not plead a *prima facie* case of discrimination." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002).

Garcia alleges that he is within the protected class because he is over 40, was qualified for his executive director position, was terminated, and was replaced by Montes, a younger employee. (Docket Entry No. 32 at ¶ 58). Garcia has alleged sufficient facts for a *prima facie* pleading under the ADEA.

## 2.     The Older Workers Benefit Protection Act Claim

Garcia alleges that the defendants violated the Older Workers Benefit Protection Act by encouraging him to sign agreements releasing all claims against the defendants under that Act, the Americans with Disabilities Act, the ADEA, and Title VII of the Civil Rights Act of 1967. (Docket Entry No. 32 at ¶¶ 31–32, 61). The defendants argue that Garcia has not stated a violation of the Act because he does not and cannot allege that he signed a waiver. Because Garcia alleges that he "never signed the Release Agreements he claims would have waived his right to bring ADEA and other claims," the defendants argue that "he never waived any right or claim, and therefore fails to state a claim under the [Act]." (Docket Entry No. 33 at 16).

"Congress adopted the OWBPA as an amendment to the Age Discrimination in Employment Act ("ADEA") to ensure that workers did not carelessly waive a potential ADEA claim." *Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 375 (5th Cir. 2002) (citations omitted) (citing *Oubre v. Entergy Operations, Inc.*, 552 U.S. 422, 426–27 (1998)). The Act prohibits an individual from "waiv[ing] any right or claim . . . unless the waiver is knowing and voluntary," 29 U.S.C. § 626(f)(1), and "requires, among other things, that a waiver of a right or claim be in writing, that it be between the individual and the employer, and that it specifically refer to rights or claims arising under the ADEA." *Williams v. Cigna Fin. Advisors, Inc.*, 56 F.3d 656, 660 (5th

Cir. 1995); *see also Tagliabue v. Orkin LLC*, No. 6:17-CV-0013, 2018 WL 3055779, at *1 n.1 (S.D. Tex. June 20, 2018) ("The plaintiff does not have standing to sue under the OWBPA because he did not waive his rights under the ADEA.").

Garcia has alleged that he did not sign the releases presented to him. (Docket Entry No. 32 at ¶¶ 32, 48). Without a signed release that waived claims, Garcia did not waive his rights under the ADEA and has not stated a plausible claim under the OWBPA. Garcia's OWBPA claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

### 3.    The Retaliation Claim

To state a retaliation claim under the ADEA, a plaintiff must allege that he engaged in activity protected under the ADEA, he suffered an adverse employment action, and there was a causal connection between the protected activity and the adverse employment action. *Holtzclaw v. DSC Commc'ns Corp.*, 255 F.3d 254, 259 (5th Cir. 2001). A plaintiff need not plead a *prima facie* retaliation case at the motion to dismiss stage, but he or she must plead enough facts on all "the ultimate elements" to state a plausible claim. *Jenkins v. La. Workforce Comm'n*, 713 F. App'x, 242, 245 (5th Cir. 2017); *see also Flores v. Select Energy Servs., LLC*, 486 F. App'x 429, 432 (5th Cir. 2012) ("The elements of a *prima facie* case are helpful, however, in framing what constitutes [a discrimination] claim.").

The defendants argue that Garcia was not taking part in a protected activity because "common sense and legal precedent demonstrate that it is impossible for a retaliatory act to precede the protective activity." (Docket Entry No. 33 at 20). Garcia alleges that Bertholf told him that at the March 22, 2018, Board meeting that he "was to resign," before Garcia was "engaged in the protected activity of refusing to sign the March 22 Release Agreement," which was presented to him to sign after his termination. (*Id.*).

10

In *Cox v. City of Houston*, No. H-04-4318, 2005 WL 2086166 (S.D. Tex. Aug. 26, 2005), the district court considered a plaintiff's allegation that he was retaliated against for refusing to sign an agreement that would have waived legal claims under the ADEA and other statutes in exchange for lesser punishment for certain disciplinary infractions. *Id.* at *1–*2. The court concluded that the plaintiff had failed to state an ADEA retaliation claim because "the ADEA specifically provides for such waivers." *Id.* at *3. When the plaintiff declined to sign the waiver, he was "not engag[ing] in a protected activity" because he made no complaint that his employer was discriminating against him. *Id.*; *see also Leicht v. Tejas Anesthesia, P.A.*, No. SA-07-CA-720-FB, 2009 WL 10670134, at *7–*8 (W.D. Tex. Sept. 15, 2009).

Garcia alleges that he was retaliated against after he "made a good faith complaint of discrimination and harassment . . . including his statutory right to review the severance document within 21 days and being able to consult with an attorney." (Docket Entry No. 32 at ¶ 61). Unlike the plaintiff in *Cox*, Garcia alleges that he made a discrimination complaint when he refused to sign the release document. (*Id.* at ¶ 31). Because of this additional detail, Garcia alleged facts supporting an inference that he was engaged in a protected activity before the claimed retaliation occurred. *Cf. Reilly v. TXU Corp.*, No. 3:05-cv-0081-R, 2006 WL 2586818, *14–*15 (N.D .Tex. 2006) (a plaintiff's failure to sign a release was not protected activity because the plaintiff did not tell his employer why he was not signing it), *rev'd on other grounds*, 271 F. App'x 375 (5th Cir. 2008).

The defendants' argument that Garcia's protected activity—explaining that he wanted to protect his ADEA rights as his reason for refusing to sign the release—came after the allegedly retaliatory acts fails to acknowledge that Garcia has alleged retaliation beyond his termination. Garcia alleges that he was told at the March 2018 Joint Venture Board meeting that he "was to

resign" even before he refused to resign and sign the release agreement. Garcia alleges that weeks before he was presented with the release agreement, the Southeast Harris County Board "had already voted to terminate his employment." (Docket Entry No. 32 at ¶ 28). And he alleges that he was barred from the workplace, escorted out by an officer, denied compensation he would have received under his proposed retirement plan, and denied the ability to reclaim his personal belongings, after complaining and refusing to sign. Because Garcia has alleged adverse employment actions and a causal connection between those actions and his "good faith complaint of discrimination and harassment," he has stated a plausible retaliation claim under the ADEA. *See, e.g.*, *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 948–49 (5th Cir. 2015); *Richard v. Cingular Wireless LLC*, 233 F. App'x 334, 338 (5th Cir. 2007); *cf. Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 68 (2006) (an adverse action is one a reasonable employee would find materially adverse).

The motion to dismiss this claim is denied.

### B.     The Fraudulent Misrepresentation and Inducement Claims

Garcia alleges that the Communities in Schools Joint Venture Board members "recklessly or knowingly made false or misleading material representations" to Garcia about his employment, his personal property, and his compensation, so that he "would continue to work for the Defendants or sign a[] release agreement to waive his rights without attorney review." (Docket Entry No. 32 at ¶ 63). He also alleges that Shea "knowingly and falsely represented to [him] that she had cancelled" a March 22, 2018, Board meeting, but "held a secretive Board meeting and knowingly made false representations to [Communities in Schools Southeast Harris County] Board members that [Garcia] had submitted his resignation and agreed to terms for severance" on March 29, 2018, without Garcia. (*Id.* at ¶¶ 24–25). According to Garcia, he relied on the Board's promises

"regarding the terms of his employment, including compensation for unused vacation and severance pay." (*Id.* at ¶ 64). The defendants argue that "Garcia fails to allege that he actually and justifiably relied on the alleged misrepresentation[s]." (Docket Entry No. 33 at 29).

> To plead common-law fraud under Texas law, a plaintiff must allege facts showing that:
>
> (1) that a material misrepresentation was made; (2) the representation was false; (3) when the representation was made, the speaker knew it was false or made it recklessly without any knowledge of the truth and as a positive assertion; (4) the speaker made the representation with the intent that the other party act upon it; (5) the party acted in reliance on the representation, and (6) the party thereby suffered injury.

*Turner v. Pavlicek*, H–10–00749, 2011 WL 4458757, at *11 (S.D. Tex. Sept. 22, 2011) (quoting *Aquaplex, Inc. v. Rancho La Valencia, Inc.*, 297 S.W.3d 768, 774 (Tex. 2009)). Fraud allegations "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." FED. R. CIV. P. 9(b). "At a minimum, Rule 9(b) requires that a plaintiff set forth the 'who, what, when, where, and how' of the alleged fraud." *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1993) (quoting *Williams v. WMX Techs., Inc.* 112 F.3d 175, 179 (5th Cir. 2003)). "The pleader must 'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent." *Williams*, 112 F.3d at 177.

Garcia has not alleged facts that could support a plausible inference that the Joint Venture Board members knowingly or recklessly made material misrepresentations about Garcia's resignation, or that he relied on those alleged misrepresentations. The first misrepresentation alleged with particularity is that in 2013, Garcia and the Board agreed that the Board would pay him for "any unused vacation time in 2013" when he left the Joint Venture, by "keeping and submitting accurate records per board requests in his timesheets of all unused vacation" time.

(Docket Entry No. 32 at ¶ 20). Garcia has not alleged facts supporting an inference that when the Board made these statements in 2013, it knew that they were false or recklessly disregarded whether they were false. While Garcia alleges that when he left in 2018, the Board did not pay him for all unused vacation time, "the mere failure to perform a contract is not evidence of fraud." *Gilmore v. Bank of Am., N.A.*, No. 4:12-CV-3149, 2013 WL 5162207, at *5 (S.D. Tex. Sept. 11, 2013) (quoting *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998)). "A promise to do an act in the future is actionable fraud when made with the intention, design and purpose of deceiving, and with no intention of performing the act." *Spoljaric v. Percival Tours, Inc.*, 708 S.W.2d 432, 434 (Tex. 1986). Garcia fails to allege that the defendants did not intend to pay him for unused vacation time in the future when they made the promise. His claim for fraudulent misrepresentation is dismissed, with prejudice and without leave to amend, because amendment would be futile.

Garcia's amended complaint also fails to allege facts sufficient to support a plausible inference that he relied on Shea's alleged misrepresentations about the Board meeting or about Garcia's resignation. Although he alleges that "Shea intentionally and knowingly falsely represented to [him] that she had cancelled the meeting," the amended complaint alleges that Garcia attended the Board meeting on March 22, 2018, showing that he did not rely on her alleged representation that the meeting was canceled. (Docket Entry No. 32 at ¶¶ 25, 29). Garcia alleges that Shea misrepresented to the Joint Venture and the Communities in Schools Southeast Harris County Board that Garcia "had submitted his Draft Proposal to both boards and was seeking to retire in May 2018," and "had agreed to terms for severance." (*Id.* at ¶¶ 24, 27). However, Garcia does not allege facts that could lead to a plausible inference that he relied on these alleged misrepresentations. *See Turner*, 2011 WL 4458757, at *11. Instead, he resisted the efforts to

14

make his retirement earlier. This claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

Garcia also fails to state a claim for fraudulent inducement. He alleges that the defendants made fraudulent statements "with the intent that [he] would continue to work for the Defendants or sign a release agreement to waive his rights without attorney review." (Docket Entry No. 32 at ¶ 63). "Fraudulent inducement 'is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof.'" *Bohnsack v. Varco, L.P.*, 668 F.3d 262, 277 (5th Cir. 2012) (quoting *Haase v. Glazner*, 62 S.W.3d 795, 798–99 (Tex. 2001)). Garcia does not allege that he entered an agreement with the defendants based on any of these statements. Instead, he alleges that he did not sign the release agreements and that he "continued to request his property back." (*Id.* at ¶ 48). Without an allegation that he entered into an agreement, Garcia fails to state a fraudulent inducement claim. That claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

### C.    The Breach-of-Contract Claim

Garcia appears to allege that the defendants must pay him for his unused vacation time. (Docket Entry No. 32 at ¶ 64). The defendants argue that the Statute of Frauds bars the claim because Garcia "fails to allege that the parties promised to sign an already existing written agreement regarding Plaintiff's unused vacation time and severance pay." (Docket Entry No. 33 at 38).

The Texas Statute of Frauds requires that an agreement be memorialized in a signed writing if it "is not to be performed within one year from the date of making the agreement." TEX. BUS. & COM. CODE § 26.01(b)(6). The amended complaint alleges that the promise to pay Garcia for his unused vacation time was made in 2013 and was not to be fully performed until he retired. (*Id.*

at ¶ 20).  Garcia does not allege that the agreement was written or that performance would be within a year.  "For promissory estoppel to create an exception to the statute of frauds, there must have been a promise to sign a written agreement that had been prepared and that would satisfy the requirements of the statute of frauds."  *1001 McKinney Ltd. v. Credit Suisse First Bos. Mortg. Capital*, 192 S.W.3d 20, 29 (Tex. App.—Houston [14th Dist.] 2005, pet. denied) (citing *Nagle v. Nagle*, 633 S.W.2d 796, 800 (Tex. 1982)).  "A promise to prepare a written contract is not sufficient.  The defendant must have promised to sign a particular agreement which was in writing at the time."  *Beta Drilling, Inc. v. Durkee*, 821 S.W.2d 739, 741 (Tex. App.—Houston [14th Dist.] 1992, writ denied).  Because Garcia has failed to allege an agreement in writing, his contract claim based on promissory estoppel is dismissed, with prejudice and without leave to amend, because amendment would be futile.

### D.      The Intentional Infliction of Emotional Distress Claim

The defendants argue that Garcia's intentional infliction of emotional distress claim fails because he has not alleged facts showing extreme and outrageous conduct and because he has other available remedies.  (Docket Entry No. 33 at 22–26).  "To prevail in a suit for intentional infliction of emotional distress in Texas, a plaintiff must show: (1) intentional or reckless conduct; (2) that is extreme and outrageous; (3) that caused emotional distress; and (4) that was severe in nature."  *Burden v. Gen. Dynamics Corp.*, 60 F.3d 213, 218 (5th Cir. 1995). Whether conduct is "extreme and outrageous" is a question of law.  *Brewerton v. Dalrymple*, 997 S.W.2d 212, 215–16 (Tex. 1999).  Liability is imposed only when the conduct has been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community."  *Id.* (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d. (1965)).  "The cause of action does not protect against mere insults, indignities, or

threats." *Brown v. Kastle Sys. of Tex. LLC*, No. H-08-02888, 2010 WL 3342219, at *25 (citing *Johnson v. Merrell Dow Pharms., Inc.*, 965 F.2d 31, 33 (5th Cir.1992)).

Garcia alleges that the defendants used "intimidation through a law enforcement officer, verbal threats, and [a] surprise attack regarding his 'voluntary' resignation" to cause him severe emotional distress. (Docket Entry No. at ¶ 66). He alleges that he could not collect his personal belongings, "was escorted out of the building by an armed police officer" in view of Communities in Schools staff, and had his belongings held "hostage" to induce "him into signing a release agreement." (*Id.* at ¶¶ 66, 67). Garcia alleges that, after his termination, the defendants "established a false narrative regarding his resignation leading to salacious rumors" accusing him of theft, tolerating racism and sexual harassment in the workplace, and "gross misconduct." (*Id.* at ¶ 68). He also alleges that the defendants "hired a private investigator" who left "unmarked packages" at Garcia's home. (*Id.* at ¶ 69). Because of these stresses, Garcia alleges he cancelled an anniversary party. (*Id.* at ¶ 71).

An intentional infliction of emotional distress claim cannot be brought for "mere employment disputes." *Johnson*, 965 F.2d at 33 (quotation marks omitted). "In order to properly manage its business, an employer must be able to supervise, review, criticize, demote, transfer, and discipline employees." *Id.* at 34. "[T]he intentional infliction of emotional distress [is], first and foremost, a 'gap-filler' tort, judicially created for the limited purpose of allowing recovery in those rare instances in which a defendant intentionally inflicts severe emotional distress in a manner so unusual that the victim has no other recognized theory of redress." *Hoffmann–La Roche Inc. v. Zeltwanger*, 144 S.W.3d 438, 447 (Tex. 2004).

Garcia has not alleged facts that could show extreme and outrageous conduct. He alleges a security-guard escort from the office, "verbal threats," and the surprise announcement that he

had to resign, caused him "extreme and severe emotional distress." (Docket Entry No. 32 at ¶ 66).

However, police escorts of terminated employees off the former employer's premises, and "mere

insults, indignities, threats, annoyances, petty oppressions, or other trivialities[,] do not rise to the

level of extreme and outrageous conduct." *Tex. Farm Bureau Mut. Ins. Cos. v. Sears*, 84 S.W.3d

604, 610 (Tex. 2002) (quoting *GTE Southwest, Inc. v. Bruce*, 998 S.W.2d 605, 611 (Tex. 1999));

*see Wornick Co. v. Casas*, 856 S.W.2d 732, 734 (Tex. 1993). Garcia's allegations suggest that he

faced pressure at the Board meeting, but under Texas law far more serious actions are not extreme

and outrageous, as a matter of law. *See, e.g.*, *Am. Med Int'l, Inc. v. Giurintano*, 821 S.W.2d 331,

341–42 (Tex. App.—Houston [14th Dist.] 1991, no writ). The "salacious rumors" that Garcia

alleged followed his termination are similarly not extreme and outrageous. "Under Texas law,

potentially defamatory statements, including those that are false, abusive, unpleasant, [or]

objectionable . . . simply do not give rise to a cause of action for intentional infliction of emotional

distress." *Tackett v. KRIV-TV (Channel 26)*, No. H-93-3699, 1994 WL 591637, at *2 (S.D. Tex.

May 5, 1994).

The alleged delivery of a package containing USB drives, which Garcia did not open, and

the discovery that Evans had hired a private investigator to deliver those drives, do not approach

the level of extreme or outrageous conduct. (Docket Entry No. 32 at ¶ 50); *cf. Creditwatch, Inc.

v. Jackson*, 157 S.W.3d 814, 817–18 (Tex. 2005) (a supervisor's successful effort to have an

employee evicted from her home was "callous, meddlesome, mean-spirited, officious,

overbearing, and vindictive," but not sufficiently outrageous to amount to intentional infliction of

emotional distress). Beyond this one incident, Garcia does not allege other harassment from

Evans. Without more, these allegations do not support an inference that Garcia faced conduct that

was "atrocious" and surpassed "all possible bounds of decency," such that it was "utterly

intolerable in a civilized community." *Dean v. Ford Motor Credit Co.*, 885 F.2d 300, 306 (5th Cir. 1989) (quoting RESTATEMENT (SECOND) OF TORTS § 46 cmt. d.).

The allegations also fail to support a plausible inference that Garcia suffered severe emotional distress. "The law intervenes only where the distress is so severe that no reasonable person should be expected to endure it." *Behringer v. Behringer*, 884 S.W.2d 839, 844 (Tex. App.—Fort Worth 1994, writ denied) (citing RESTATEMENT (SECOND) OF TORTS § 46 cmt. j)). Garcia alleges that he suffered reputational injuries, the cancellation of a retirement party and a wedding anniversary, and stress related to proceedings in front of the Texas Workforce Commission. (Docket Entry No. 32 at ¶¶ 68–71). These allegations cannot support the conclusion that Garcia suffered "severe" emotional distress beyond what one ordinarily would endure from adverse employment decisions. *Patton v. United Parcel Serv., Inc.*, 910 F. Supp. 1250, 1272 (S.D. Tex. 1995) (citing *Regan v. Lee*, 879 S.W.2d 133, 136 (Tex. App.—Houston [14th Dist.] 1994, no writ)). Garcia's intentional infliction of emotional distress claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

### E.    The Breach of Fiduciary Duty Claim

Garcia alleges that he has standing as the former executive director of the Communities in Schools Joint Venture to bring a claim that the "named Defendant Board of Directors for [the Joint Venture] violated their fiduciary duties to [the Joint Venture] by acting in direct violation of the Corporate By-Laws." (Docket Entry No. 32 at ¶ 74). According to Garcia, his removal "will only result in further harm to [the Joint Venture] because of its illegality, negative publicity, the liability that [the Joint Venture] will now incur as a result, and the loss of a founding member." (*Id.*). He alleges that the defendants' actions were ultra vires, and that he, "as a representative of the public," may seek declaratory relief "to invalidate and enjoin those illegal actions." (*Id.*). The defendants

argue that Garcia's breach of fiduciary duty claim fails because he lacks standing to assert it. They argue that Texas law does not give a plaintiff the right to bring a derivative suit on behalf of a nonprofit corporation. (Docket Entry No. 33 at 26).

Garcia lacks standing to bring a derivative claim for the Joint Venture Board's alleged breach of fiduciary duty or ultra vires acts. Under Texas law, a shareholder of a for-profit corporation may bring a derivative suit under the Business Organizations Code. *Tran v. Hoang*, 481 S.W.3d 313, 316 (Tex. App.—Houston [1st Dist.] 2015, pet. denied) (citing TEX. BUS. ORGS. CODE §§ 21.551–21.563). However, "[n]o parallel provision confers this status upon the members of a nonprofit who are not otherwise authorized to sue by the organization itself." *Id.* Garcia's former executive director position does not give him standing to assert these claims.

In *Swain v. Wiley College*, 74 S.W.3d 143 (Tex. App.—Texarkana 2002, no pet.), the court explained that a former college president lacked standing to challenge the college board's decision to terminate him based on alleged violations of the board's bylaws. Because the president was not a shareholder, he could not challenge "the legality of actions" at the board's meeting. *Id.* at 148. In *Inge v. Walker*, No. 3:16-CV-0042-B, 2017 WL 4838981 (N.D. Tex. Oct. 26, 2017), the court explained that a former member of a nonprofit organization lacked standing to bring claims that the organization's board members committed ultra vires acts against him and the organization by failing to comply with the organization's bylaws, because the plaintiff was no longer a member when he sued. *Id.* at *3. As in *Inge* and *Swain*, because Garcia has not alleged that he is a current Board member or that he is a legal representative of the organization, he lacks standing to bring his derivative claims against the defendants. Garcia's derivative claims are dismissed, with prejudice and without leave to amend.

Garcia has similarly failed to state a claim for breach of a fiduciary duty owed to him as an employee. Texas law does not recognize a fiduciary duty or a duty of good faith and fair dealing owed by an employer to an employee. *Beverick v. Koch Power, Inc.*, 186 S.W.3d 145, 153 (Tex. App.—Houston [1st Dist.] 1997, pet. denied) (citing *City of Midland v. O'Bryant*, 18 S.W.3d 209, 216 (Tex. 2000)). Garcia's fiduciary duty claim, to the extent he alleges one, is also dismissed with prejudice, because amendment would be futile.

## F.    The Civil Conspiracy Claim

Garcia alleges that the Communities in Schools Joint Venture Board of Directors conspired to terminate him "while engaging in conduct outside their authority as representatives of Defendant [Joint Venture]." (Docket Entry No. 32 at ¶ 76). According to Garcia, the Joint Venture Board members "knowingly made false representatives . . . to perpetuate a false narrative or fraudulent misrepresentation" that Garcia had voluntarily resigned and illegally prevented him from recovering his personal property in an "attempt[] to extort [him] to sign a settlement agreement." (*Id.*; *see also id.* at ¶ 26). Garcia also alleges that the Board members conspired to "knowingly and intentionally misrepresent[] to governmental agencies the factual basis" for his termination, which defamed Garcia and caused him emotional distress and financial loss. (*Id.* at ¶ 76). He alleges that he suffered "immediate loss of his wages, insurance, promised unused vacation pay, reputational harm, emotional harm, and attorney's fees." (*Id.*).

The elements of civil conspiracy include: "(1) two or more persons; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful, overt acts; and (5) damages as a proximate result." *Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005). Civil conspiracy requires an unlawful means or purpose, including an underlying tort. *Chu v. Hong*, 249 S.W.3d 441, 444 (Tex. 2008); *Tilton v. Marshall*, 925 S.W.2d 672, 681

(Tex. 1996); *see also Juhl v. Airington*, 936 S.W.2d 640, 644 (Tex. 1996) (merely proving a joint intent to engage in conduct that resulted in injury is not sufficient; civil conspiracy requires specific intent to agree to accomplish an unlawful purpose or to accomplish a lawful purpose by unlawful means).

Garcia does not clearly identify the tort underlying in his civil conspiracy claim. He alleges that the defendants sought "to perpetuate a false narrative or fraudulent misrepresentation regarding [his] voluntary resignation to other [Joint Venture] Board members" and "took illegal action converting [his] personal property after his illegal removal." (Docket Entry No. 32 at ¶ 76). Because the court dismisses Garcia's claims for fraudulent misrepresentation, his derivative civil conspiracy claim cannot succeed on that basis. Garcia also cannot base his civil conspiracy claim on violations of antidiscrimination statutes because, under Texas law, civil conspiracy claims must be based on an underlying state tort. *See, e.g.*, *Homoki v. Conversion Servs., Inc.*, 717 F.3d 388, 402 (5th Cir. 2013) ("In order to adequately plead a claim for civil conspiracy, a plaintiff must adequately plead the underlying tort."); *Klein v. Walker*, No. 1:14-CV-00509-RC-ZJH, 2016 WL 9242015, at *4–*5 (E.D. Tex. June 10, 2016), *report and recommendation adopted*, No. 1:14-CV-00509-RC, 2016 WL 3995731 (E.D. Tex. July 25, 2016). However, the defendants have not challenged Garcia's conversion claim, and Garcia has alleged facts to support that his civil conspiracy claim is based, in part, on that state-law tort. Garcia's civil conspiracy claim is dismissed, with prejudice and without leave to amend, to the extent that it is based on his state-law tort claims other than conversion.

## G.    The Conversion Claim

Garcia alleges that the defendants deprived him of his personal property, "including Vietnam war accolades, medals, degrees, Distinguished Alumni Medals, Multiple Distinguished

Community Service [plaques], pictures, and furniture" for eight months. (Docket Entry No. 32 at ¶ 78). The defendants have not moved to dismiss this claim. (Docket Entry No. 33 at 10 n.2).

### H.    The Defamation Claim

To state a defamation claim under Texas law, a plaintiff must allege that the defendant: "(1) published a statement; (2) that was defamatory concerning the plaintiff; and (3) while acting . . . with negligence . . . regarding the truth of the statement." *Fields v. Keith*, 174 F. Supp. 2d 464, 473 (N.D. Tex.) *aff'd*, 273 F.3d 1099 (5th Cir. 2001) (citing *WFAA–TV, Inc. v. McLemore*, 978 S.W.2d 568, 571 (Tex. 1998)). A defendant may have a qualified privilege protecting statements, such as those made by an employer about an employee to an individual with a common interest. *Duffy v. Leading Edge Prods., Inc.*, 44 F.3d 308, 312 (5th Cir. 1995); *see Pioneer Concrete of Tex., Inc. v. Allen*, 858 S.W.2d 47, 49 (Tex. App.—Houston [14th Dist.] 1993, writ denied). The privilege may be lost, however, if a plaintiff shows by clear and convincing evidence that the publisher was motivated by actual malice when the statement was made. *Duffy*, 44 F.3d at 312.

Garcia's amended complaint alleges that various statements were defamatory, including:

- Vasut's allusions to Garcia "giving himself pay raises without board approval" at the March 22, 2018, Joint Venture Board meeting;

- statements made in a March 23, 2018, meeting with the Joint Venture executive staff about Garcia's "health, demeanor, acting strange, and suggestions of financial improprieties";

- Evans's statement at the March 23, 2018, meeting that "she would do a forensic audit looking for fraud";

- Montes's email to Joint Venture employees "stating that [Garcia] had resigned";

- Montes's statements at a March 28, 2018, meeting with "the entire [Communities in Schools] full time staff that [Garcia] had resigned";

- Evans's June 21, 2018 letter to the Texas Workforce Commission that the Joint Venture had "accepted and approved" a letter of resignation from Garcia in March 2018;

- "aggresiv[e] questions" from the Joint Venture's attorney at a November 2018 meeting about "improper raises" that were made "knowing [the] statement was false";

- "continuous false statements regarding [Garcia's] termination of employment to third parties, including employees of [the Joint Venture] and the [Texas Workforce Commission]";

- and "continuous allegations of financial fraud, creating a toxic environment for employees, racism, theft, and sexual misconduct as reasons for his alleged 'voluntary resignation.'"

(Docket Entry No. 32 at ¶¶ 38–39, 49, 53, 80).

Statements made in judicial proceedings are privileged under Texas law. *See, e.g.*, *Bird v. W.C.W.*, 868 S.W.2d 767, 771 (Tex. 1994). "Even potentially perjured testimony is absolutely privileged and cannot form the basis of a subsequent action for libel." *Dick v. J.B. Hunt Transp., Inc.*, 772 F. Supp. 2d 806, 823 (N.D. Tex. 2011). This privilege applies equally to quasi-judicial proceedings before a Texas administrative body that has the "authority to redress grievances to which it takes cognizance." *Attaya v. Skoukfeh*, 962 S.W.2d 237, 239 (Tex. App.—Amarillo 1998, writ denied). Because this privilege extends to statements made before the Texas Workforce Commission, the allegedly false statements made to the Texas Workforce Commission cannot support a defamation claim. TEX. LAB. CODE § 301.074; *see Hardwick v. Hous. Lighting & Power Co.*, 881 S.W.2d 195, 198 (Tex. App.—Corpus Christi 1994, writ dism'd w.o.j.).

Many of the other statements are expressions of opinion that are not actionable as defamation. *Teel v. Deloitte & Touche LLP*, No. 3:15-CV-2593-G, 2015 WL 9478187, at *4 (N.D. Tex. Dec. 29, 2015). Because opinions about the quality of an employee do not assert an objectively verifiable fact, they cannot be the basis of a defamation claim. *Am. Heritage Capital, L.P. v. Gonzalez*, 436 S.W.3d 865, 875 (Tex. App.—Dallas 2014, no pet.). Garcia alleges statements that he created a "toxic environment," but that is a statement of opinion. *Cf. Kirkland v. Racetrac Petroleum, Inc.*, No. 3:13-cv-1754-N, 2014 WL 982852, at *3 (N.D. Tex. Mar. 13,

2014) (statements that an employee gave "bad customer service and did not work to company standards" were not "disparaging words referring to [the employee's] economic interests"); *Morris v. Blanchette*, 181 S.W.3d 422, 425–26 (Tex. App.—Waco 2005, no pet.) (a statement that a doctor's procedures were "totally unreasonable and substantially failed to meet the professional, recognized standards" was an opinion that could not support a defamation claim).

The amended complaint's other allegations are not specific enough to state a defamation claim. The allegation that defamatory statements were made at the March 23, 2018, meeting about Garcia's "health, demeanor, acting strange, and [making] suggestions of financial improprieties," fails to identify the speaker, what the statements were, and whether those statements were false. (*See* Docket Entry No. 32 at ¶ 38). Garcia's allegations based on the email to employees stating that Garcia had resigned, that the defendants represented that Garcia had submitted a retirement proposal, that a lawyer asked questions at a November 2018 meeting, and that "continuous allegations of financial fraud, creating a toxic environment for employees, racism, theft, and misconduct" were used to justify Garcia's "resignation," are not specific enough, or state opinions that cannot be a plausible basis to claim defamation. (*Id.* at ¶ 80). Garcia does not identify who made the statements and the time and place of the alleged statements. The allegation that Vasut "alluded that [Garcia] had been giving himself pay raises without board approval" does not contain enough detail about what the statement was to state a plausible defamation claim. (*Id.*). The allegation refers to an "allusion," nothing more. Similarly, the allegation that Evans stated at a March 23 meeting that "she would do a forensic audit looking for fraud" fails because Garcia has not pleaded facts showing that she did not intend to conduct the audit, which is necessary to make the statement false. (*Id.* at ¶ 38).

The allegation that Montes stated at a March 28 meeting with "the entire CIS full time staff that [Garcia] had resigned" pleads the necessary speaker, time, and place of an allegedly false statement of fact to state a claim for defamation. (*Id.* at ¶ 39). However, a defamatory statement is one that "is likely to lower [the person referred to] in the estimation of reasonable people and in particular to cause that person to be regarded with feelings of hatred, contempt, ridicule, fear, or dislike." BLACK'S LAW DICTIONARY 428 (7th ed.1999). Garcia has not alleged facts that could support an inference that the statement was defamatory. Garcia's counsel did not offer an argument in support of its defamatory nature. This defamation claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

Because Garcia's defamation claims based on statements insinuating that he engaged in financial or sexual impropriety suggest that, if pleaded with greater particularity, Garcia may have a claim that certain defendants made statements "likely to lower [Garcia] in the estimation of reasonable people," those claims are dismissed without prejudice and with leave to amend. The remaining defamation claims are dismissed, with prejudice and without leave to amend, because amending those claims would be futile.

## I.      The Claims Against the Individual Defendants

The amended complaint alleges that the ADEA and OWBPA claims are against the Joint Venture's agents and employees. (Docket Entry No. 32 at ¶ 58). It does not identify which of the individual defendants is included within this group. (*Id.*). As the defendants point out, Garcia cannot bring ADEA and OWBPA claims against individual defendants because agents and employees cannot be liable under those laws. *Medina v. Ramsey Steel Co. Inc.*, 238 F.3d 674, 686 (5th Cir. 2001).

Garcia also does not identify the specific defendants against whom he brings his retaliation claim. The amended complaint alleges that the "Board of Directors and [the Joint Venture] instantly retaliated against [Garcia] . . . by terminating him immediately" at the March 22 meeting. (Docket Entry No. 32 at ¶ 29). However, the amended complaint also later alleges that the "[d]efendants retaliated by immediately terminating his employment," without identifying the defendants or confining that group to Board members. (*Id.* at ¶ 61). Montes, Evans, and Sellers are not alleged to have been at the March 22, 2018, meeting, and they are alleged to be Joint Venture employees, not members of the Board. (*Id.* at ¶ 19). Because a corporate employee or officer can be personally liable for tortious acts only if that individual directs or knowingly participates in those acts, the amended complaint does not support a plausible retaliation claim against Montes, Evans, and Sellers. *Leyendecker & Assocs., Inc. v. Wechter*, 683 S.W.2d 369, 375 (Tex. 1984). To the extent that Garcia alleges that those employees retaliated against him, that claim is dismissed, with prejudice and without leave to amend, because amendment would be futile.

## IV. Conclusion

The court grants the motion to dismiss as to Garcia's claims for violations of the Older Workers Benefit Protection Act, fraudulent misrepresentation, breach of contract, promissory estoppel, intentional infliction of emotional distress, breach of fiduciary duty, and ultra vires acts in violation of corporate bylaws, with prejudice and without leave to amend, because amendment would be futile. The court also grants the motion to dismiss with respect to the Age Discrimination in Employment Act and the Older Workers Benefit Protection Act claims against individual defendants and the retaliation claims against Montes, Evans, and Sellers, with prejudice and without leave to amend, because amendment would be futile.

Garcia's defamation claims based on statements insinuating that he engaged in financial or sexual impropriety are dismissed, without prejudice and with leave to amend. The remaining defamation claims are dismissed, with prejudice and without leave to amend, because amendment would be futile.

The court denies the motion to dismiss with respect to Garcia's discrimination and retaliation claims under the Age Discrimination in Employment Act. Garcia's conversion claim and his civil conspiracy claim based on conversion also remain. (Docket Entry No. 33). Garcia must file an amended complaint no later than **June 21, 2019.**

SIGNED on June 10, 2019, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge